---

(118 App. Div. 164)

## In re RICHARDSON'S ESTATE.

(Supreme Court, Appellate Division, First Department. March 8, 1907.)

EXECUTORS AND ADMINISTRATORS—DISTRIBUTION OF ESTATE—SETTLEMENT.

After executors had filed several accounts, to which objections were filed and which were referred to a referee, and after one of the beneficiaries had made an application to remove the executors, all the parties interested entered into a stipulation or agreement whereby one of the executors was authorized to wind up the estate and sell the property and make divisions in accordance with the terms of the will, and it was provided that advances made by such executor or by his wife to the estate for the purpose of preserving the same should be secured by a certain mortgage, and that such executor should take no proceedings to enforce such claim against the estate within two years, and that the accounts of the executors be passed and the reference closed. Thereafter one of the parties to the stipulation petitioned for a setting aside thereof, alleging that none of the provisions of the agreement had been carried out, but such allegations were denied by the executors. Held, that the surrogate had no authority to set aside the stipulation which had been acted upon without objection for over eight years, in the absence of any evidence that the executors had been guilty of any fraud or negligence, as the agreement was not a mere stipulation relating to a proceeding pending before the surrogate.

Appeal from Surrogate's Court, New York County.

Judicial proceedings on the settlement of the estate of Benjamin Richardson, deceased. Appeal from an order setting aside a stipulation or agreement executed between the executors and the next of kin, devisees, and legatees of the estate, and allowing one of the beneficiaries to file objections to the account of the executors. Reversed.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and SCOTT, JJ.

Robert C. McCormick, for appellants.

George H. Mallory, for respondent.

INGRAHAM, J. Benjamin Richardson, the testator, died on the 20th day of February, 1889. He left a last will and testament, which was admitted to probate, by which William T. Washburn and Emma J. Richardson were appointed executors. By this will, after leaving some legacies and devising some real estate, the testator gave to these executors in trust the residue of the real estate, and to his granddaughter, Ella Birdsall, the residue of his personal estate. He directed his executors to sell all said real estate, from time to time, as the same could be sold to advantage, and out of the proceeds thereof to pay his just debts and incumbrances upon said real estate, and, after all of the said debts, incumbrances, and legacies have been paid, to pay the balance remain-

ing to such of his children as should be living at the time of his death. The executor and executrix qualified. Finally an application was made to compel them to account, and thereupon an account was filed. Objections thereto were filed, which were referred to a referee. The proceeding before the referee upon this accounting continued until something over 4,000 pages of testimony were taken. The executors also filed a second, third, and fourth account, objections to which were also filed, and which were referred to the same referee. In the year 1894 one of the beneficiaries made an application to remove the executors, but that proceeding does not seem to have been decided.

In December, 1898, a proposal was made for a settlement of the matter in controversy, and for a winding up and distribution of the estate. The hearing before the referee was suspended, and what was called a stipulation was entered into which embodied a plan of settlement. This plan consisted of eight clauses and was apparently signed by the legatees, devisees, and all those interested in the estate, including the petitioner and the attorneys for the respective parties. The first clause allowed Mr. Washburn (one of the executors) to wind up the estate, sell the real property, adjust'the claims against the estate, except those therein specified, and cause them to be paid, and divide the balance in accordance with the terms of the will, with all convenient speed and during the next six months if possible. The second clause provided that the net amount due Mr. Washburn's family (consisting of William T. Washburn, Emma J. Richardson, and Mary R. Washburn) from the estate of Benjamin Richardson, deceased, for cash advances and loans both secured and unsecured, made by them to it, was adjusted at the sum of $38,004.04 on the 10th day of September, 1895, when the executors filed their fourth account, which sum, with interest to the 6th day of August, 1898, amounted to the sum of $45,-334.03, when, by the receipt of Mary R. Washburn of the sum of $6,333.40 from the proceeds of the sale of the 101st street property, the same was reduced to the sum of $37,000.65, "which shall be considered as the amount due on said last-mentioned date for the said advances and loans, and is, with the interest, secured by the triplicate mortgage given by the executors and heirs of Benjamin Richardson, deceased, to Mary R. Washburn." It was then agreed that no proceedings should be taken by the said Mary R. Washburn or by any future holder of said mortgage to enforce the same prior to the 1st day of January, 1900. It was then provided that, upon a sale of the property covered by the mortgages, one-half of the net proceeds of such sale or sales should, after the payment of all prior liens on the property so sold, be applied to the payment of the indebtedness secured by the triplicate mortgage; and the property so sold shall be released from the lien thereof so soon as said Mary R. Washburn or her assigns shall have received from such sale or sales, or from any other assets or property of said estate, a sum of money sufficient to pay the amount so secured by said mortgage and interest thereon. It was further provided that certain other mortgages held by Mary R. Washburn should be sold, canceled, and discharged of record, and that certain actions specified should be discontinued; that the executors were to take no proceedings to enforce the restitution of the various sums of money paid to the heirs

and others on their order, consent, or assignment by the chamberlain
of the city of New York pursuant to the orders made in different ac-
tions in the Supreme Court; that the accounts of the executors on their
first accounting then referred to the referee should be passed and the
reference closed, and the amount of Mr. Washburn's bill for pro-
fessional services rendered to Benjamin Richardson, deceased, should
be allowed at $15,000, without interest, and the fees of the referee
and stenographer should be paid out of the funds of the estate as soon
as possible; that the account of the executors contained in their second,
third, and fourth accounts should be adjusted and passed as soon as
possible; that all proceedings brought by the heirs against the execu-
tors should be discontinued. Provision was also made for the sale of
the remaining real property as soon as possible, that Mr. Washburn was
to cause a certain mortgage held by the Chapman estate on certain dock
property belonging to the estate to be extended or transferred to par-
ties who would not press for immediate payment, and that he would,
if it became necessary, provide funds to meet the pressing necessities
of the estate. This agreement was submitted to the referee, but nothing
seems to have been done by him until December, 1902, when he returned
this stipulation to the court, and the accounts of the executors were
allowed and settled.

It was alleged by the petitioner that none of the provisions in this
agreement or stipulation were carried out by the executors. The
executor denied most of the allegations of these petitioners, except
as to the delay, which he excused upon the ground that it was impossible
to sell the other property of the estate and close up the estate for vari-
ous reasons. One was that there is a large judgment in favor of the
estate against the city of New York, which is on appeal and cannot be
disposed of until that appeal is determined; that all the property has
not been sold because of the fact that some of it is unsalable, and be-
cause the title of some is in dispute. There are many other people in-
terested in the estate besides the petitioner who have acquired rights un-
der this agreement. They do not seem to have taken any part in this
proceeding, and I do not find that they have had notice of this applica-
tion. Various items are set up in the moving papers, as to which it
is alleged the executors have not accounted, or in relation to which their
accounts are improper; but it is not alleged but that all of these facts
were known to this petitioner and the others interested in the estate
when the agreement was executed. She was at that time represented
by counsel, who also signed it. There are no false representations al-
leged which would justify the setting aside of the agreement, and it
would appear that the executor or executrix, or the wife of the ex-
ecutor, have advanced to the estate, based upon this agreement, large
sums of money to protect the property of the estate, and which will
place the executor in a very different position in regard to this property
if this stipulation is set aside. From the statements of the executor,
which do not seem to be disputed, it seems that this estate was very
largely incumbered by mortgages, liens, and judgments, and, while the
delay in settling the estate has been very great, on these papers I do
not see that it can be said that the delay has been caused by any fraud-
ulent or improper acts of the executor. There was no investigation.

of the facts alleged in this petition and denied by the executor. The allegations in the petition are general and indefinite, consisting only of general allegations of wrongdoing, all denied specifically by the executor; but the surrogate has set aside an instrument under which the parties to this estate have acquired rights that have been acted upon without objection for over eight years, without any competent evidence that these executors have done anything that is improper or been guilty of any fraud, or which justifies any action, except unsupported, indefinite allegations in a petition, which are positively denied.

I do not think that the surrogate had power to make any such order. While the surrogate would have power to relieve the parties from a stipulation which had relation merely to a proceeding pending before him, this stipulation or settlement of a controversy was much more extensive than that. It is true that it provided that the accounts of the executors should be passed and allowed as submitted by them; but that was a small part of the agreement, and was an incident to or consideration for the settlement of the controversy, the provisions of which he swears he has fully performed, and which certainly, so far as advancing many thousands of dollars and delaying the enforcement of mortgages, which represented moneys advanced by him for the protection of the estate out of his own resources, have been fully performed. Under the circumstances, the surrogate could not thus summarily dispose of the rights acquired by those interested in the estate, under the guise of relieving the parties from a stipulation made in his court in relation to the executors' accounting. To set aside the stipulation so far as it allowed the executors' accounts to be passed, without replacing the executor in the position that he was in at the time the agreement was made and repayment to him of the moneys that he had advanced for the benefit of the estate, would be contrary to all principles of equity, especially where there is no fraud alleged in procuring the execution of the agreement.

It is clear that this instrument cannot be set aside in this proceeding, and the order appealed from should therefore be reversed, with $10 costs and disbursements payable by the petitioner, and the proceeding dismissed, with costs. All concur.

---

(118 App. Div. 170)

PERKINS v. UNDERHILL et al.

(Supreme Court, Appellate Division, First Department. March 8, 1907.)

1. BROKERS—ACTION FOR COMPENSATION—SUFFICIENCY OF EVIDENCE.

Evidence in an action for a broker's commission *held* insufficient to show that he did anything towards securing the attendance of the purchaser at the sale.

2. SAME—DUTY TO PRINCIPAL—COMMISSIONS FROM BOTH PARTIES.

Where a real estate broker appraised land and made an offer therefor for a prospective purchaser, he was bound to act in good faith toward his principal and to obtain the property at the lowest possible price, and their relationship was inconsistent with an arrangement with the seller for a commission on the amount the principal might pay at a public auction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, §§ 52–54.]